3-358-CV, Jacqueline R. Malone, John Malone v. Bryant Park Corporation. Good morning. We have Attorney Pujar. Pujar. Pujar. Attorney Pujar, I understand you would like to reserve one minute for rebuttal? Yes. You may proceed. Good morning, Your Honors, may it please the court. My name is Aparna Pujar from Napolish Kalnik and I represent the appellants, Mrs. Malone and Mr. Malone in this case. Your Honors, the district court in this case granted summary judgment by reviewing a dangerous tripping hazard in vacuum. We ask this court to reverse the summary judgment because the district court improperly resolved jury questions regarding crowding, distraction, visibility and dangerousness by treating a bright, by only looking at the bright color and the that created tribal issues. In your view, was it improper for the court to look at the photo? Your Honors, it wasn't improper to look at the photo. It was not improper? It was not, but it was improper to look at the photo in vacuum. Just looking at the photo and the size of the mat was not enough. The court did not look at the surrounding circumstances, Your Honor. Okay, but I just wanted to make sure that your argument is not that the court considered a piece of evidence that was improper. It was that the way in which the court evaluated the photo in your view was improper. Yes, Your Honor. Your Honor, it's well settled law in New York that the question of whether a condition is open and obvious cannot be divorced from the surrounding circumstances. In this case, in the height of the holiday season on December 30th, Mrs. Malone was navigating a sidewalk bottleneck created due to the winter village that and she was distracted by oncoming crowd, and when she stepped on the right side, she tripped over a three-inch yellow mat. Now, there was a large Can I just ask you, so I guess you're suggesting that all the court considered was the mat, but this other information you're bringing in about the testimony about the crowd and walking down the street, what is your reason for saying that the court made everything come down solely to, well, I see the mat and the mat is open and obvious? Your Honor, because in the order, the court really discounts Mrs. Malone's testimony and also has not even considered Mr. Malone's testimony at all, which is part of the record, Your Honor. They say that there is nobody else to say that there was distraction or there was crowd, but we have Mr. Malone, who was right next to her, so who was a witness to the accident and who corroborates the fact that there was an unusual crowd coming towards them, and that's when she stepped aside and she tripped on this yellow mat, Your Honor. And how does that feed into the open and obvious analysis? Is it the fact that we consider whether or not it's open and obvious based on the number of people who were there that day? And so on a day where it's not a day like today, if they were out in that same area, it might not be crowded, and so if the fall had happened in those circumstances, a finding that the mat is open and obvious might be okay, but because it happened during the holidays and all of that, that's potentially what makes it not open and obvious? Is that your… Yes, Your Honor, because there is distraction and there is surrounding circumstances. I have cited multiple cases, Your Honor, for example, a Second Circuit case, Borley v. United States. In that case too, there was a metal rod sticking out from the exit of a shopping center, and in general, it would not be considered as a dangerous hazard, but due to the placement and the circumstances surrounding it, it is considered to be inherently dangerous. And when, in this case, when there's a lot of crowd coming towards you during winter times, everybody is in their long coats and big boots and a big group is coming, and my client here is a visitor from Florida. She is not from Manhattan. She never goes to Bryant Park. She doesn't go to Bryant Park every year to know that there is going to be so much crowd. She doesn't know what's coming her way. She doesn't walk those paths every day. So for her, it is not open and obvious. In her situation, it is not open and obvious. And for her, that mat is inherently dangerous. May I direct your attention to a different question, not the open and obvious part, but the question of why the defendant in this case, in your view, owed a duty to your client of maintaining the sidewalk on which the mat was placed. And let me just float the idea. The question, I thought, is that in general, under New York laws, the municipality that has the duty to maintain the sidewalk and that the duty would shift to the defendant only if there's one of the four exceptions, right? Yes. Okay. Yes, Your Honor. And you would argue that there's a special use exception here, right? Yes, Your Honor. There is a special... Would you just explain that to me? Definitely, Your Honor. Your Honor, for example, my client was there to visit the shops in Winter Village. During this season, they do make special commercial use of this location. They have two... So wait. Yeah, I want to do that. So they make special use of the park, but they don't have booths on the sidewalk, do they? They don't, Your Honor. So how is it different from a store, I don't know, say Saks Fifth Avenue, where people walk on the sidewalk to get there? So many people want to go shopping over Christmas. They either want to go to the Christmas Village in Bryant Park or to a department store. Would you say that during Christmas, a department store makes special use of the sidewalk because they want so many people to walk into the store? And to do that, they have to go over the sidewalk? Would you say that as to the department store? Definitely, Your Honor. You would? Yes, Your Honor. If there are 4 million... Annually, 4 million people go to the Winter Village in Bryant Park. No, no. Let's pause on the department store. Yes. Your view is that a department store makes special use of the sidewalk, what, during Christmas? Because so many people are going into the department store? Your Honor, if... Is that your position? Your Honor, if the department store is holding a special festival or is relying on... is holding a special festival or is having a special... We don't have a festival, but let's say they have a big Christmas sale. Everything marked down 10%. In your view, at that moment, is the department store making special use of the sidewalk? Yes, Your Honor. And then, if they don't have a sale, but they're just open to the public and they're trying to make a lot of money, at that moment, are they or are they not making special use of the sidewalk, in your view? In that circumstance, no, Your Honor, because that's for public use. And in this case, Your Honor, there's a licensee agreement, too, apart from special use. If my theory about... The license is for the park, not for the sidewalk, right? The Article 11 in the license agreement specifically says that Bryant Park Corporation is responsible to maintain the sidewalks, to take care, to clean the sidewalks, to take care of the safety of the sidewalks. Well, but I thought that the rule under New York law is that a statute or ordinance can shift the burden to the lessee of maintaining a sidewalk, but that otherwise, the owner of a sidewalk's duty to maintain the sidewalk is non-delicable. Your Honor, I'm not saying that BPC, Bryant Park was exclusively responsible. The city was also responsible, but as per this agreement, the lease agreement, even Bryant Park did have some duty. They were the ones that were sweeping the area every day. They were not doing this out of goodness of their hearts. They were doing it because there is a lease agreement in place, which gives them the responsibility for the day-to-day cleanliness and safety of the sidewalk. And in fact, Ms. Solomon, who was their witness, who's the vice president of operations in Bryant Park Corporation, she admits that she knew about the mat, and they did sweep around the area every day. So it's not as if they were not... You're agreeing it's a non-delegable duty that the city remains liable, but that they can add other people to the liability notwithstanding the statute? It says it's a non-delegable duty? I guess that's new to me. What I mean, Your Honor, is that it may be a non-delegable duty, but they are not completely delegating the duty. Well, they can't. The law says they cannot delegate the duty. So it's not a question that they can fully do it or partly do it or delegate 10%. I'm just trying to understand if it's a non-delegable duty you're saying, but they can impose a duty? I don't understand. Maybe I'm not understanding what non-delegable is. I don't know. Your Honor, but there is a license agreement in place, and we are at the stage of summary judgment. We don't need to decide everything. No, we do. If the law says that they can't delegate the duty, that's a summary judgment decision, right? It doesn't depend on how many leases you have. If the law in New York says that you can have 72 leases that delegate a duty, but the law does not allow you to delegate a duty, that is something for a summary judgment, right? Yes, Your Honor, but they are not delegating the complete, everything to do with sidewalk. They are delegating, not delegating, but they are giving some responsibility because they have leased the location so that they take care, they maintain, they clean, they keep the area safe. And there is, Bryant Park does have a duty to maintain and keep the area safe, and they have taken up that responsibility. Even their witness talks about how they clean the area, how they sweep the area on a daily basis. I think we have your argument, and you have still reserved one minute for rebuttal. We kept you up a little bit here, but that's on us. Okay, thank you. Thank you. Why don't we hear from Attorney Schaub for the affiliate? Good morning, and may it please the Court. Jonathan Schaub from Schaub, Alameda, Citron, and Spratt on behalf of Bryant Park Corporation. The district court's order granting summary judgment should be affirmed for three reasons. First, as the district court correctly held, the large yellow mat in this case was open, obvious, and not inherently dangerous. Second, because the accident happened on a public sidewalk, BPC did not owe a duty of care, as none of the three exceptions apply. And third, because the mat was resting on top of a subway grate, 34 RCNY 2-07B is implicated, and that regulation assigns the sole responsibility for the maintenance and safety of the subway grates and any type of grate and the 12 inches surrounding it to the owner of that hardware. So in this case, we are out on three grounds. To address a few points that my friend on the other side raised, I think the Court was hitting on this that the district court magistrate judge's case analysis was far from superficial. It was 15 pages long. She carefully considered the evidence. She applied the law meticulously. And so the suggestion that this was just a per se rule that she developed based on a photograph is just not borne out by the decision itself. We heard some reference to Mr. Malone's testimony, and that's a focal point of my friend's brief, the plaintiff's brief. Mr. Malone's testimony was never actually cited to Magistrate Judge Cade, so it's kind of a procedural issue from that standpoint. To say that the district court got it wrong based on testimony that was never cited to her is not fair to the judge. We were talking about this issue of distraction. If you review the evidence in the testimony, you'll never see the word distraction. You'll never see the word obscure. In fact, there was multiple opportunities for this evidence to be adduced. For example, during plaintiff's deposition, her counsel could have adduced testimony asking, were you distracted? But I think more practically speaking, in opposition to summary judgment, if she was, in fact, distracted, we would have thought that we would have seen the declaration from the plaintiff saying she was, in fact, distracted or that she could not see the mat. And they didn't put that declaration in because they can't. And the evidence shows in this case what happened here is for five seconds before the accident, there was no one in front of her, there was no one standing to the right of the plaintiff, and there was a bunch of mats, a proverbial yellow brick road of mats in front of her. So it was there to be seen. It was just a momentary inattentiveness that led to this accident. We heard reference to the Borley decision. I pulled up the record on appeal in Borley, and if you look at the photo of what was the hazard in that case, it was a bar that stuck into an emergency exit at ankle height. I could hardly think of a more inherently dangerous condition than an ankle-high bar that blends into the surroundings and color of the floor in front of an emergency exit. On the issue of open and obvious, I think there's three through lines that the magistrate judge correctly ascertained. You look at the contrast between the object or the dangerous condition and the surroundings. Here it's a bright yellow mat. The testimony shows it was three feet by eight feet set against a dark sidewalk, so there was contrast. You look at multiplicity. So how many of this object are there? Again, here there's a long row of these mats, so it wasn't an isolated thing like a single cone that could be lost. And then the third is size, and as the court correctly noted, this was a large object. This was not something that was small that could be lost. So I think the court got it exactly right on the open and obvious issue. Then moving to the duty question, that's not a factual issue. Duty is a legal question, so it's something that, as this court has recognized, it has to be decided here. Special use, we have also struggled to kind of identify what the theory of special use here is, and it seems to be that because Bryant Park held festivals and the sidewalk provided access to Bryant Park, that was a special use. That's not what this court's Williams decision has kind of identified as the touchstone or cornerstone of special use. Special use involves situations where something's installed into the ground, where there's a variance in the sidewalk, so like a driveway is put through a sidewalk, and in terms of installation, it's a water main, it's a gas line, something that's there. And there are numerous decisions that have said that using a sidewalk to enter a business is not a special use. There's no special benefit that's derived that's different from its ordinary purpose. It's a sidewalk that allows people to enter and exit. There's even cases that say that when a business allows customers to line up on the sidewalk, that's not a special use. There is a decision in the old city or old Shea Stadium that the boardwalk that connected Long Island Railroad to Shea Stadium, that wasn't a special use, even though patrons used that to attend the games. So that's pretty consistent with the special use doctrine. Additionally, the jurist Pruden says in special use, it has to be exclusive control. There's no evidence of exclusive control here, and the greatest evidence of that is that the MTA or the New York City Transit Authority put these maps down. So clearly, BPC didn't have exclusive control. And then the last point is the special use has to have created the dangerous condition. We've always understood this case to be that the mat was the dangerous condition. It's not clear how you then tie the use of the sidewalk to the creation of the mat. BPC had nothing to do with the mat, and the special condition was the sidewalk. So it's a mismatch that can't exist under the law. On the license agreement, just note that that was raised for the first time in reply. So as the Court correctly noted, the Court of Appeals in 2019 in the Jiang decision said that it's a non-dedicable duty. The New York City legislature made or city council made a policy decision to place liability on the owners, and that was their decision, and that's where it remains. What do you make of your adversary's argument that non-dedicable means that the city can't get out from under the liability, but they can add other people to be concurrently liable? That's not my understanding of non-dedicable, but what I'm hearing my friends say is something akin to an Espinal argument under New York law that a contract can create a duty. But that's only under three specific circumstances, and Espinal is the seminal case on this issue. Espinal isn't cited a single time in any of these briefs because that issue wasn't raised until reply. But, again, it's a non-dedicable duty. And then I think the last point is on the 34 RCNY 2-07, that's not responded to. That's essentially conceded. The plaintiff never challenges that that is the applicable regulation, that's an exclusive duty, and those are the people who are responsible. And what happened here in this case is the plaintiff failed to file a notice of claim against the MTA and the New York City Transit Authority, and that's why they're not in this case, and that's who you would have thought would have been in this case. And then the remaining defendants, the utilities, the city, they were all discontinued. So we're the last party here, but we're the least culpable party because of duty. We're just the wrong party to be here. So it's not that there wouldn't have been recourse. It's just not recourse from us. So unless the Court has any other questions, we'll rest on our brief. No, thank you very much. Thank you. Attorney Pujar, you have reserved one minute for rebuttal. Your Honors, I just want to clarify one point. I'll just take less than 30 seconds. Regarding my client's testimony where she does not specifically say that she was distracted, Your Honor, no such question was asked to her multiple times in her deposition and in her 50-age testimony. She says that there was a lot of crowd coming in front of her, and she was just looking straight, and she moved at the time. That's the reason this trip and fall happened. Although she never used the words, specific words, saying that it was obscure or she was distracted, but she did mention that she never looked at the mat. She saw the mat only after she fell, after her face was on the mat. That's when she saw it. So although she never used those words, Your Honor, she is not an attorney. She doesn't know what words are to be used while deposing. She described how the accident happened according to her. She was distracted, and that is our argument, that she was distracted based on her deposition testimony. Regarding Mr. Malone's testimony, counsel is correct that we never cited the testimony in our opposition to summary judgment. However, Your Honors, it was part of the record, and it is part of the record before you, Your Honors. So Your Honors could consider his testimony while deciding this case. And that's all, Your Honor. Thank you. Thank you very much, counsel. We appreciate your arguments today, and we will take the case under advisement.